## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARC S. CASON, SR., #180571       :

                               :

                               :

        v.                        :          Civil No. CCB-14-482

                               :

                               :

WEXFORD HEALTH SERVICES, INC.     :

## MEMORANDUM

Plaintiff Marc Cason, Sr. ("Cason"), a Maryland Division of Correction prisoner incarcerated at Western Correctional Institution ("WCI"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming Wexford Health Services, Inc. ("Wexford") and alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. Cason alleges that Wexford did not provide him with the correct catheter, causing him to suffer urinary tract infections. Cason further alleges that he requires two medications, Klonopin and Baclofen, to combat muscle spasms and stiffness. Cason seeks injunctive relief and money damages. Wexford has filed a motion to dismiss or, in the alternative, for summary judgment,[1] which Cason opposes. A hearing is not required to resolve the motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Wexford's motion will be granted.

## BACKGROUND

Cason, age fifty-four, suffered a stab wound injury to the neck resulting in incomplete paraplegia. (Def.'s Mot. Dismiss or for Summ. J. ("Def's Mot.") Ex. 2, Ottie Aff. ¶ 5, ECF No. 7-3.) In addition to suffering from chronic pain, Cason must perform self-catherization to void

---

[1] Wexford seeks to seal its dispositive motion because the motion and exhibits disclose Cason's personal medical history. (Def.'s Mot. Seal ECF No. 7, ECF No. 10.) The motion will be denied, except as to the medical records, (ECF No. 7-2), which will be sealed. Cason has not requested the sealing of any portion of his case and indeed has put his medical history at issue. Some discussion of that history is necessary to explain the court's decision in this case.

and is vulnerable to urinary tract infection.  (*Id.*)  Cason uses a wheelchair.  (*Id.*)  Cason's mental health history includes depression with a prior suicide attempt[2] and opiate abuse.  (*Id.*)

Beginning July 1, 2005, pursuant to a written contract with the State of Maryland, Wexford served as the utilization review management provider in connection with the delivery of health care to prisoners, including Cason, confined in Maryland's Department of Public Safety and Correctional Services ("DPSCS").  (Ottey Aff. ¶ 2.)  Prior to July 1, 2012, Wexford did not directly provide or deliver primary medical care or clinical services to DPSCS prisoners.  (*Id.*)  On July 1, 2012, pursuant to a contract with the State of Maryland, Wexford became both the medical contractor and utilization review services provider for Maryland prisoners.  (*Id.*)

When Wexford became the primary medical contractor for WCI, Cason was receiving Tramadol[3] to manage his chronic pain, and Baclofen for his muscle spasms.  (Medical Records, at 20-21.)  On October 9, 2012, he complained to Physician's Assistant Beverly Sparks that he experienced breakthrough pain within four hours of taking Tramadol.  He also complained that he was experiencing back pain, which he attributed to his large wheelchair.  (*Id.* at 42-43.)  Sparks increased Cason's Tramadol dosage from 50 mg to 100 mg twice a day and told Cason she would attempt to find a smaller wheelchair.  (*Id.*)

On October 17, 2012, Cason reported pain in the right side of his neck and shoulder to Ali Yahya, M.D.  (*Id.* at 46-47.)  On exam, Dr. Yahya noted no significant problems.  (*Id.*)  Dr. Yahya noted Cason already was taking Tramadol, and added a non-steroidal anti-inflammatory medication to be taken in conjunction with his other pain medications.  (*Id.*)

---

[2] In March 2007, Cason was placed on suicide watch after he overdosed on Baclofen, a muscle relaxer used to treat muscle spasms, pain, and stiffness.  (Def.'s Mot. Ex. 1, Medical Records, at 1, ECF 7-1.)  Cason had "ingested several pills of Baclofen in [an] attempt to commit suicide and nearly succeeded in doin[g] so."  (*Id.* at 2.)

[3] Tramadol (also known as Ultram) is a narcotic-like pain reliever.

On October 31, 2012, Cason was again seen by Dr. Yahya for a chronic care evaluation. (*Id.* at 48-49.)  Cason continued to complain of neck pain.  No changes were noted on exam. Cason's pain medication regimen was continued and his Baclofen prescription was renewed. (*Id.*)

On November 8, 2012, Cason complained of excruciating back pain.  (*Id.* at 236.)  On November 12, 2012, Cason told Registered Nurse Delores Adams his Tramadol dose was insufficient.  (*Id.* at 50.)  Nurse Adams referred Cason to a provider for pain management.  (*Id.*)

On November 16, 2012, Cason was seen by Dr. Yahya, and reported aching pain localized in the shoulder, lower back and both legs at a 4 on a scale of 1 to 10.  (*Id.* at 53-54.)  He denied joint pain and indicated the pain did not interfere with his daily activities.  On exam no spinal kyphosis[4] or scoliosis[5] was noted.  Cason's musculoskeletal exam was unremarkable. Noting Cason's history of substance abuse, Dr. Yahya concluded that Cason might be engaging in drug-seeking behavior and made no changes to Cason's pain treatment plan.  Dr. Yahya also explained that due to the chronic nature of his condition, Cason's pain could not be fully controlled.  (*Id.*)

On November 30, 2012, Cason was again seen by Physician's Assistant Sparks, and requested a new gel cushion for his wheelchair.  A cushion was ordered.  (*Id.* at 55-56.)

On December 8, 2012, Cason asked to see a physician about his pain medication.  (*Id.* at 237.)  On December 12, 2012, he was seen by Physician's Assistant Quinta Lum.  (*Id.* at 57-58.) Cason requested renewal of his Tramadol prescription at an increased dosage.  (*Id.*)  He was advised that his dosage would not be changed and that his prescription was current through

---

[4] Kyphosis ("hunchback") is an abnormal curvature of the upper back that exceeds 50 degrees.
[5] Scoliosis is a side-to-side curvature of the spine that causes a noticeable asymmetry in the torso when viewed from the front or back.

February 2013.   Cason was also advised that Naproxen[6] had recently been added to his medication regimen for breakthrough pain.  (*Id.*)

On January 3, 2013, Cason submitted a sick call slip reiterating his request for an increase in his Ultram dose.  (*Id.* at 238.)  On January 7, 2013, he was seen by Physician's Assistant Lum.  (*Id.* at 59-60.)  Cason was in no apparent distress and was again told his pain medications were adequate and would not be increased.  (*Id.*)

 On January 15, 2013, Cason submitted a sick call slip requesting his Baclofen prescription be renewed and reiterating his request for an increase in his Ultram/Tramadol dose due to ineffective pain relief.  (*Id.* at 239.)  Cason also requested additional physical therapy. (*Id.*)  On January 17, 2013, he was seen and evaluated by Ava Joubert, M.D.  (*Id.* at 62-63.)  On exam, Cason was in no apparent distress, but winced when Dr. Joubert touched the right side of his neck.  (*Id.*)  While she found asymmetry of the right shoulder, Dr. Joubert noted only mild pain on motion.  (*Id.*)  No joint deformity, swelling, redness or effusion was observed in the left shoulder and Cason had full range of motion.  (*Id.*)  Dr. Joubert recommended Cason receive an evaluation by the physical therapist to develop a home exercise plan, and otherwise made no changes to Cason's medication regimen.  (*Id.*)  Cason's request for physical therapy was denied because Cason previously had received 48 sessions of physical therapy.  (*Id.* at 64.)

On January 28, 2013, Cason was reevaluated by Dr. Joubert for unrelated complaints of abdominal pain.  (*Id.* at 65-66.)  A liver ultrasound was recommended and approved.  (*Id.* at 70.)

On February 7, 2013, Cason saw Dr. Joubert for renewal of his Ultram prescription and made no complaints. (*Id.* at 71-72.)   On February 12, 2013, his annual physical exam was completed by Physician's Assistant Sparks.  (*Id.* at 76-79.)  No genitourinary complaints were

[6] Naproxen is a nonsteroidal anti-inflammatory drug (NSAID) that reduces the hormones that cause inflammation and pain in conditions such as arthritis.

raised, no kyphosis or scoliosis was observed, and no skeletal tenderness or joint deformity was noted.  (*Id.*)  Routine lab work was requested, including urinalysis.  (*Id.*)

On February 27, 2013, Cason refused to attend his off-site trip for his liver ultrasound because it was "too much of a hassle for [him]."  (*Id.* at 85.)  On February 28, 2013, Cason was seen by Physician's Assistant Lum and indicated that his abdominal pain had subsided.  (*Id.* at 86-87.)  Cason's Baclofen prescription was renewed.  (*Id.*)

On March 5, 2013, Cason refused his supply of straight catheters,[7] stating he could only use clear catheters and not red catheters, which he believed were too flimsy.  (*Id.* at 202.)  He refused his catheter supply on this basis on March 12 and April 23, 2013.  (*Id.* at 203, 205.)

On April 27, 2013, Cason was seen by Dr. Ottey for chronic care evaluation.  (*Id.* at 89-90.)  He reported that, although he was getting relief with his medication regimen, he still experienced breakthrough pain on a scale of 8 out of 10 in his neck, shoulder, and groin.  (*Id.*)  Cason denied any numbness or tingling and raised no urinary or bladder complaints.  (*Id.*)  On exam, he demonstrated moderate pain with motion and tenderness in his right shoulder.  Cason was advised to continue with his current medication regimen and his prescription for Ultram/Tramadol was renewed.  (*Id.*)

On May 10, 2013, Cason submitted a sick call slip requesting special lotion and shampoo and reiterating his request for physical therapy, stating that it had been over two years since therapy had been provided and his muscles were rigid.  (*Id.* at 240.)  On May 14, 2013, he was advised by Physician's Assistant Lum that physical therapy was based on rehabilitation and treatment and was not currently clinically indicated. (*Id.* at 107.)  Cason was advised to continue his medication regimen and to follow-up as needed.  (*Id.*)

---

[7] Straight catheters are designed to be passed through the urethra into the bladder to drain urine.

On June 3, 2013, Cason again refused his catheter supply on the basis that he could only use the clear ones. (*Id.* at 209.) On June 13, 2013, a one-year medical assignment order for catheter supplies, including straight catheters, intermediate condom catheters,[8] and one leg bag per week were written for him. (*Id.* at 190.) On June 17, 2013, Cason again refused his catheter supplies. (*Id.* at 210.) On July 2, 2013, a one-year medical assignment order for a wheelchair and assignment of another prisoner to act as a pusher was written. (*Id.* at 191.)

On July 15, 2013, Cason was seen by Nurse Practitioner Peggy Mahler for a chronic care evaluation. (*Id.* at 114-16.) Cason reported pain in the neck and shoulder without numbness. (*Id.*) He was advised that his Baclofen prescription had expired on June 28, 2013, and that an alert had been placed on Cason's medical file reflecting that Cason could not be given Baclofen due to his prior "severe suicide attempt." (*Id.*) Mahler informed Cason that his Ultram/Tramadol would be renewed. (*Id.*) On exam, Cason's genitourinary and musculoskeletal exams were normal and he reported no bladder or urinary complaints. (*Id.*)

On August 1, 2013, Cason submitted a sick call slip requesting Baclofen, stating that he had been trying to get the prescription renewed, and advising staff that Dr. Ottey was supposed to have renewed it one month earlier. (*Id.* at 241.) On August 3, 2013, he was advised by Physician's Assistant Katie Winner that Baclofen had been discontinued due to a prior suicide attempt. (*Id.* at 121-122.)

On August 21, 2013, nursing staff were called to evaluate Cason for complaints of severe pain and refusing to get out of bed. (*Id.* at 124.) Cason's vital signs were taken and an elevated temperature of 101.9 degrees was recorded. (*Id.*) A urine sample was obtained and a dip stick

---

[8] A condom catheter is an external urinary collection device that fits over the penis and is used to manage urinary incontinence.

test showed trace blood and nitrate indicative of a possible urinary tract infection.  (*Id.*)  A urine culture was requested and Cason was started on ten days of Bactrim, an antibiotic.  (*Id.*)

On August 23, 2013, Cason was seen for follow-up by Nurse Mahler, who noted the urine culture remained pending.  (*Id.* at 125.)  Cason reported feeling better, but also reported dysuria and blood in his urine.  (*Id.*)  He denied fever, chills, nausea, vomiting, abdominal, or flank pain and was advised to complete his course of Bactrim and increase fluids.  (*Id.*)  Cason was further advised that he would be reevaluated in two weeks.  (*Id.*)  On August 24, 2013, the laboratory performing his urine culture reported that it was unable to complete the study because of an issue with the transport tube.  (*Id.* at 183.)

On September 2, 2013, Cason received his medical supply bag, but refused his straight catheters, again stating that the red catheters were too flimsy for him to insert.  (*Id.* at 214.)  On September 16, 2013, he again refused his catheter supplies because they did not include his preferred catheters.  (*Id.* at 215.)  On September 18, 2013, Cason was seen by Registered Nurse Lori Schafer for complaints of bleeding from the penis after trying to self-catheterize.  (*Id.* at 128-29.)  He was advised to use a condom catheter in lieu of a straight catheter, to increase fluids, and to return to the medical department if he developed signs or symptoms of infection.  (*Id.*)  A repeat urine culture was taken and the results of that study, reported on September 23, 2013, were negative.  (*Id.* at 185.)

On October 2, 2013, Cason was seen for a chronic care evaluation and voiced no complaints regarding chronic pain or urinary or bladder problems.  (*Id.* at 126-27.)  On October 14, 2014, he refused his straight catheter supplies because they were not his preferred clear ones.  (*Id.* at 131.)  On October 15, 2013, Cason was seen by Nurse Mahler for renewal of his wheelchair cushion.  (*Id.* at 132.)

On November 6, 2013, Cason submitted a sick call slip indicating that he thought he had another urinary tract infection.  (*Id.* at 242.)  On November 7, 2013, he was seen by Registered Nurse Dennis Martin.  (*Id.* at 133.)  Cason's vitals were within normal limits but a urine dipstick test was positive for blood and nitrates.  (*Id.*)  Bactrim was prescribed.  (*Id.* at 134.)

On November 8 and 10, 2013, Cason submitted sick call slips stating that "the spasms are getting unbearable," requesting renewal of his Ultram prescription, and asking for Baclofen. (*Id.* at 243-44.)   On November 13, 2013, he was seen by Nurse Practitioner Mahler, who renewed the Ultram prescription and told him that he would not receive Baclofen due to his history of attempted suicide.  (*Id.* at 135-36.)  No urinary or bladder complaints were voiced at that time.  (*Id.*)

On December 12, 2013, Cason complained he had another urinary tract infection.  (*Id.* at 245.)  Cason claimed that he "had to re-use catheters because [he was] not getting the proper straight catheters" he had consistently requested.[9]  (*Id.*)  On December 14, 2013, Cason was seen by Nurse Schafer, who ordered a urine culture and urinalysis.  (*Id.* at 139-140.)  Cipro, an antibiotic, was prescribed.  (*Id.*)  The urine culture showed mixed flora, possibly normal flora consistent with contamination from genital contamination.  (*Id.* at 185.)  The urinalysis was negative for nitrates and leukocytes and no microscopic findings were reported consistent with a urinary tract infection.  (*Id.*)

On January 9, 2014, Cason was seen by Nurse Practitioner Mahler for chronic care evaluation and reported effective pain control on Tramadol/Ultram.  (*Id.* at 144-46.)   The prescription was renewed.  (*Id.*)  Cason denied any genitourinary issues.  (*Id.*)

---

[9] In his opposition, Cason states that he is provided only two to three straight catheters per week, which very often are rubber and therefore are "impossible to clean" and not meant to be reused.  (Pl.'s Opp'n 1, ECF No. 9.)  Cason also claims he was not given supplies to clean his catheters and attributes his urinary tract infections to his inability to clean his catheters.  (*Id.*)

On February 14, 2014, Cason reported no genitourinary problems during his annual exam. (*Id.* at 155-57.)  He declined a digital rectal exam. (*Id.*)  Examination of Cason's cervical spine was positive for tenderness on palpation with moderate aching pain. (*Id.*)  He also had pain in the left shoulder which was noted as stable and worse on movement and improved by rest. (*Id.*)  A prostate specific antigen ("PSA") test and routine urinalysis were ordered and Cason was told he would be seen within a month after completion of the tests. (*Id.*)

On March 11, 2014, Cason was seen by Nurse Practitioner Mahler. (*Id.* at 160-61.)  He learned that his PSA level was normal. (*Id.*)  A urinalysis showed findings consistent with catheter use and did not suggest a urinary tract infection. (Ottey Aff. ¶ 13.)  Cason was told to increase his fluid intake. (Medical Records, at 160-61.)  A blood count was ordered and Cason was told he would be scheduled to return for chronic care assessment in one month. (*Id.*)

## ANALYSIS

As noted, defendant Wexford has moved to dismiss or, in the alternative, for summary judgment.  "The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint[.]" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted) (quotation marks omitted).  A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted."  Fed R. Civ. P. 12(b)(6).  Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff[.]" *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citations omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion.  *See Bosiger v. U.S. Airways*, 510 F.3d

442, 450 (4th Cir. 2007).  If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

"There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013).  First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious").  "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 712 F.3d at 281.

Cason had adequate notice that Wexford's motion might be treated as one for summary judgment.  The motion's alternative caption and attached materials are in themselves sufficient indicia.  *See Laughlin*, 149 F.3d at 260-61.  Further, Cason has not pointed to any additional evidence that would be helpful to the disposition of this case.  He did have access, however, to the affidavit and the medical records submitted by Wexford, along with the other

evidence presented in this case.  Accordingly, Wexford's motion will be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted).  Cason's claims will be examined under this standard.

Cason has named Wexford as the sole defendant in this action, presumably under a theory of respondeat superior liability.  But that theory does not apply in section 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under

section 1983 for school board); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (private corporation).   While Wexford is entitled to dismissal solely on this basis, the court's obligation to examine the basis for Cason's self-represented complaint does not end there.

The Eighth Amendment "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration."   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   When prison health care providers show "deliberate indifference" to a prisoner's "serious medical needs," their actions or inactions amount to an Eighth Amendment violation. *Id.* at 104.   To be deliberately indifferent, a health care provider "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [it] must also draw the inference."   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   The medical treatment provided must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."   *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.   In other words, mere negligence or malpractice does not violate the Eighth Amendment.[10]   *See Miltier,* 896 F.2d at 852; *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006).   Furthermore, absent exceptional circumstances, a prisoner's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action.   *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Cason has not shown that Wexford acted with deliberate indifference here; Wexford provided Cason constitutionally adequate medical care.   The record reflects that Cason is a chronic care patient who was regularly evaluated by medical staff to manage his needs, including health problems caused by chronic pain stemming from his stabbing injury.   When

---

[10] To the extent Cason seeks recovery based on medical negligence or medical malpractice, the court declines to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367.  Furthermore, the court makes no findings regarding the care provided by any medical personnel involved in Cason's case.

appropriate, medical staff provided physical therapy to address his pain and prescribed him a home exercise plan.   Moreover, Cason received a number of medications, including Tramadol/Ultram, to control his pain.   Over the course of his confinement, Cason received catheter supplies and medication for his chronic pain.

Cason's complaint expresses disagreement about the medical decisions regarding the medications prescribed to manage his chronic pain and the type of catheter he was provided. Regarding his prescriptions, Cason disagrees with the decisions to allow his prescription for Baclofen to expire and to refrain from providing him Klonopin.   But it is well settled that mere disagreement between a prisoner and his health care providers over treatment does not state a claim under section 1983.   *See Wright*, 766 F.2d at 849.   In other words, whether Cason abused Baclofen during a prior suicide attempt or whether his Baclofen-induced illness was the result of an unfortunate reaction to the drug is irrelevant; medical staff reviewed the incident, as well as Cason's mental health history and, exercising sound medical judgment, determined that discontinuance of Baclofen was medically appropriate.   Medical staff likewise considered his history of substance abuse and suicidal ideation in finding that a Klonopin prescription would not be appropriate.

This same principle applies to after Cason reported symptoms suggestive of a urinary tract infection, medical staff evaluated him, ordered laboratory diagnostic testing, and prescribed appropriate medical treatment.

Wexford, through its employees, has provided constitutionally adequate medical care to Marc Cason. For reasons stated herein, and based on the uncontroverted medical record, defendant is entitled to summary judgment.

A separate order follows.

November 14, 2014
Date

/S/
Catherine C. Blake
United States District Judge